Nos. 10-17369 & 11-15016
(Pro Bono)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL,

*Plaintiff-Appellants,*

v.

AURORA LOAN SERVICES LLC et al.,

*Defendant-Appellees.*

Appeal from Judgments of the United States District Court for the Northern District of California, Case No. C 10-01042, Hon. Jeffrey S. White

## REPLY BRIEF OF PLAINTIFF-APPELLANTS
## (REPLACEMENT BRIEF)

ROBERT E. CLARK, Bar No. 245882
*DUMAS & CLARK LLP*
*150 CALIFORNIA STREET, SUITE 2200*
*SAN FRANCISCO, CA 94111*
Telephone: *(415) 762-1640*
Facsimile: *(415) 762-1640*
*Attorneys for Plaintiff-Appellants*

# Table of Contents

Table of Contents ..................................................................................................i

Table of Authorities............................................................................................ ii

Argument..............................................................................................................1

    A.    The Tender Requirement Does Not Apply Where the Sale is Alleged to Be Void Because the Wrong Party Initiated Foreclosure. ...............................................................................1

    B.    The District Court Must Determine Whether the Substitution and Assignment Documents Were Effective.....................3

    C.    The FDCPA Should Be Held to Apply to Actions Taken in Connection With Non-Judicial Foreclosure. ......................................5

    D.    The Plaintiffs Are Entitled to Present Evidence that the Loan Was Procured for Consumer Purposes. ........................................8

Conclusion............................................................................................................9

# Table of Authorities

CASES

*Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101 (Cal. Ct. App. 1996) .................................................................................................................1

*Cedano v. Aurora Loan Services, LLC (In re Cedano)*, 470 B.R. 522 (9th Cir. BAP 2012) ......................................................................................1, 2

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011) ..........4

*Chua v. IB Property Holdings, LLC*, No. CV 11–05894 DDP (SPx), 2011 WL 3322884 (C.D. Cal. Aug. 1, 2011) ..................................................4

*Dimock v. Emerald Properties*, 81 Cal. App. 4th 868 (Cal. Ct. App. 2000) .............2

*Firato v. Tuttle*, 48 Cal. 2d 136 (1957)......................................................................2

*Glazer v. Chase Home Financial LLC*, 704 F.3d 453 (6th Cir. 2013) ..............5, 6, 8

*Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (Cal. Ct. App. 2011) ......................................................................................1, 2

*Halajian v. Deutsche Bank Nat. Trust Co.*, No. 1:12-CV-00184 AWI GSA, 2013 WL 593671 (E.D. Cal. Feb. 14, 2013) ..............................................2, 3

*Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006) ....................................6, 7, 8

*MERSCORP, Inc.*, OCC No. AA-EC-11-20, 2011 WL 6941536 (Apr. 13, 2011) (consent order) ....................................................................................5

*Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579 (Cal. Ct. App. 2009) ..................................................................................2

STATUTES

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* .........................5, 7, 8

## Argument

**A.     The Tender Requirement Does Not Apply Where the Sale is Alleged to Be Void Because the Wrong Party Initiated Foreclosure.**

Under California law, a plaintiff wishing to set aside a foreclosure sale for procedural irregularity must tender the full amount due. *See, e.g.*, *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (Cal. Ct. App. 1996) (noting that "appellants are required to allege tender of the amount of United's secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure"). But this case is not about a defect in the sale procedure. The Aniels have alleged that Quality Loan Service was never properly substituted as trustee under their deed of trust, and that it thus had no power to initiate foreclosure. *Cf. Cedano v. Aurora Loan Services, LLC (In re Cedano)*, 470 B.R. 522, 530 (9th Cir. BAP 2012) ("[T]o the extent the Debtor alleged that the foreclosure was substantially defective because unauthorized persons initiated the procedure, rendering the sale void, he has met one of the exceptions to the requirement of tender.").

When cases like *Cedano* refer to "unauthorized persons" initiating foreclosure, they are not talking about situations in which an agent engages in an unauthorized act on behalf of its principal. Such unauthorized actions by an agent merely render the sale voidable at the election of the principal, and the borrower is not in a position to question whether the actions were done at the principal's behest, as discussed in cases cited by the Appellees. *See, e.g.*, *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (Cal. Ct. App. 2011) (rejecting plaintiff's attempt "to bring a court action to determine whether the

1

owner of the Note has authorized its nominee to initiate the foreclosure process"); *Firato v. Tuttle*, 48 Cal. 2d 136, 139 (1957) (rejecting the argument that an "unauthorized reconveyance by a trustee" is wholly void). In these cases, the initiating parties had the power to act; the only question was whether they had permission.

    The *Gomes* court itself distinguished that scenario from a case in which the initiating party has no power to act in the first place. *See* 192 Cal. App. 4th at 1155 ("[I]n *Ohlendorf*, the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. . . . No such infirmity is alleged here."). The Aniels have alleged that the substitution of trustee (along with the assignment of the trust deed and the indorsement of the promissory note) was improperly executed, and that Quality therefore never became a trustee with power to initiate foreclosure. If this is true, then—as in *Cedano*—the sale is wholly void. *See also Halajian v. Deutsche Bank Nat. Trust Co.*, No. 1:12-CV-00184 AWI GSA, 2013 WL 593671, at *7 (E.D. Cal. Feb. 14, 2013) ("A trustee's sale undertaken by one who is not the valid trustee is void.") (citing *Dimock v. Emerald Properties*, 81 Cal. App. 4th 868, 876 (Cal. Ct. App. 2000) and *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579, 581 (Cal. Ct. App. 2009)). In these circumstances, California law imposes no tender requirement. *See id.* ("Where a trustee sale is void tender need not be alleged because the action is not based in equity.") (citing *Dimock* at 877).

### B. The District Court Must Determine Whether the Substitution and Assignment Documents Were Effective.

The Aniels claim that the documents pursuant to which the foreclosure of their property was carried out—the substitution of Quality as trustee, the assignment of the trust deed to Aurora, and the indorsement of the promissory note to Aurora—were all invalid. They claim that the individuals who signed the documents, presenting themselves as "Vice Presidents" of MERS or as a "Limited Signing Officer" of Deutsche Bank, were not in fact agents of those entities. Faced with essentially identical allegations, the District Court in *Halajian* concluded that they could not be resolved on a motion to dismiss, but required discovery concerning the existence of an agency relationship. *See* 2013 WL 593671, at *6 ("[T]he court holds that discovery necessary to prove that Ms. Cook was in fact an agent of MERS and Deutsche Bank National Trust is required before the court would reconsider a motion for summary judgment on the same ground. If Ms. Cook was not authorized to sign the assignment of deed of trust and substitution of trustee then both are invalid.").

Neither of the response briefs addresses *Halajian*'s holding. Nor do they identify any evidence of record—judicially noticeable or otherwise—showing an agency relationship. Instead, they suggest that it is merely speculative to claim that because Mary Jane Sarne was employed by McCarthy & Holthus and JoAnn Rein was employed by Aurora during the relevant period, they were not able to act as Vice Presidents of MERS.

The record doesn't tell us much about what it means for someone to hold herself out as a MERS Vice President. This Court has observed that "MERS relies

3

on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS" and that, "[a]s a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011). *Cervantes* did not address the legitimacy of this practice, though some lower courts have suggested there may be nothing wrong in principle with an individual serving in this sort of dual capacity. *See, e.g.*, *Chua v. IB Property Holdings, LLC*, No. CV 11–05894 DDP (SPx), 2011 WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011) ("[T]o the extent that Plaintiffs take issue with Lisa Markham's dual position, Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both CitiMortgage and MERS or from acting as an agent for both.").

But assuming that a dual-position Vice President can legitimately be authorized to act on MERS's behalf, the record in this case contains nothing to show that Mss. Sarne and Rein were in fact so authorized, other than their own self-characterization on the transfer and assignment documents. Nor is it merely idle speculation to question whether that characterization was accurate. A 2011 consent order issued by federal regulators found that MERS had "failed to exercise appropriate oversight, management supervision and corporate governance" and had "failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services". *MERSCORP, Inc.*, OCC No. AA-EC-11-20, 2011 WL 6941536, at *2–3 (Apr. 13, 2011) (consent

order). The order addressed some of these failures by requiring MERS to prepare and submit a plan to strengthen its governance processes with respect to "certifying officers," including "policies and processes to designate or certify individuals as authorized MERS certifying officers, *and that only such individuals act in such capacity*", as well as "policies, processes, and resources to ensure that Examined Members and third parties can quickly and accurately determine if specific individuals are designated to act as authorized MERS certifying officers." *Id.* at *7 (emphasis added). Such procedures were not in place at the time the documents in this case were signed.

The record contains nothing to verify that Ms. Sarne and Ms. Rein were authorized to execute documents as Vice Presidents of MERS, or that Jody Delfs was authorized to act as a Limited Signing Officer for Deutsche Bank. In the absence of any evidence, the district court should not have assumed they were.

C. **The FDCPA Should Be Held to Apply to Actions Taken in Connection With Non-Judicial Foreclosure.**

The Aniels' opening brief proposed that this Court should adopt the reasoning of the Sixth Circuit in *Glazer v. Chase Home Financial LLC*, 704 F.3d 453 (6th Cir. 2013), and hold that actions taken in connection with nonjudicial foreclosure are subject to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). The Appellees argue that the reasoning of *Glazer* does not apply to nonjudicial foreclosure under California law because those procedures allow no redemption rights and no possibility of a deficiency judgment following a nonjudicial sale.

The *Glazer* court does refer to the existence of redemption rights and deficiency judgments in support of its conclusion that foreclosure is undertaken as a means of obtaining payment on a debt. *See* 704 F.3d at 461. But the court did not present its holding as limited to methods of foreclosure that afford such rights and judgments—that is, limited to methods that involve something other than the enforcement of a security interest. On the contrary, the court noted that "[t]he Act nowhere excludes from its reach foreclosure or the enforcement of security interests generally." *Id.* And, pointing to provisions in the FDCPA specifically directed to foreclosure actions, the court observed that their inclusion "suggests that filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act." *Id.* at 462 (emphasis in original).

The Appellants are correct that the Fifth Circuit recognizes a distinction between collecting debts and enforcing security interests, allowing that "a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)" (the FDCPA's specific prohibition of certain nonjudicial foreclosure actions). *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006). Under *Kaltenbach*, therefore, if an entity engages in nonjudicial foreclosure (presuming that nonjudicial foreclosure is not itself a form of "debt collection") but does not otherwise meet the definition of a "debt collector," the FDCPA's applicability to that entity is limited.

6

The question is whether it is possible for an entity that only engages in nonjudicial foreclosure to fall within the definition of "debt collector." The Appellants suggest that in California, the answer should be no. That is, since nonjudicial foreclosure in California does not allow for deficiency judgments, it should not be considered debt collection and those who do it should not be considered debt collectors. But there is no indication that entities like Aurora, Quality, and McCarthy & Holthus limit their foreclosure activities to California. The FDCPA's definition of "debt collector" is concerned with the "principal purpose" of an entity's business, and whether the entity "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). If this is the nature of an entity's business practice, then it is a "debt collector" for purposes of the FDCPA, whether or not its actions in a particular instance qualify as "debt collection." *See Kaltenbach*, 464 F.3d at 529 ("Whether a debt collector's specific action qualifies as the collection of a debt may or may not be relevant when determining whether the party must comply with other, specific substantive requirements of the FDCPA, but that is a separate inquiry from whether the party meets the general statutory definition of a debt collector.").

A court cannot only consider the nature of nonjudicial foreclosure in California in determining whether the practice subjects the practitioner to the FDCPA. Even if foreclosing nonjudicially in California qualifies only as the enforcement of a security interest, doing so elsewhere may constitute collection of a debt. If an entity is regularly engaged in nonjudicial foreclosure in jurisdictions

7

where it does constitute debt collection, that entity is a "debt collector" under the FDCPA. And, as the *Kaltenbach* court rightly observed, "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." 464 F.3d at 528–29.

One of the stated purposes of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). This purpose would be thwarted by establishing a distinct rule for the FDCPA's applicability to nonjudicial foreclosure activity in California. This Court should follow the reasoning of *Glazer* and reject the District Court's conclusion that the FDCPA does not apply to nonjudicial foreclosure.

**D.     The Plaintiffs Are Entitled to Present Evidence that the Loan Was Procured for Consumer Purposes.**

The Aniels claim that at the time they procured their refinancing loan, they intended that the property would eventually become their principal residence. The Appellees dismiss that claim and insist that because the property was among several rental properties owned by the Aniels, the District Court properly found that the loan was commercial rather than consumer in nature. This is a factual dispute about the Aniels' intention. It is not the court's role to weigh evidence and plausibility when ruling on a motion to dismiss. At a minimum, the District Court should have converted the motion to a motion for summary judgment and allowed the Aniels to present evidence concerning their intention in taking out the loan.

8

## Conclusion

The Aniels respectfully ask this Court to reverse the District Court's orders of dismissal as to their wrongful foreclosure claims against Aurora, MERS, and Quality, and as to their FDCPA claims against Aurora, Quality, and McCarthy & Holthus, to vacate the District Court's judgments, and to remand the case for further proceedings.

Dated:  June 21, 2013            Respectfully submitted,

DUMAS & CLARK LLP

By:    /s/ Robert E. Clark
       ROBERT E. CLARK
       Attorneys for Plaintiff-Appellants
       Fermin Solis Aniel and
       Erlinda Abibas Aniel

9th Circuit Case Numbers 10-17369 & 11-15016

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 21, 2013.

      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert E. Clark*

# **SERVICE LIST**

| Appellants | Represented by |
|---|---|
| Fermin Solis Aniel<br>75 Tobin Clark Drive<br>Hillsborough, CA 94010<br>Telephone: (605) 284-6417 | Robert E. Clark<br>Dumas & Clark LLP<br>150 California St., Suite 2200<br>San Francisco, CA 94111<br>Telephone: (415) 762-1640<br>Facsimile: (415) 762-1640<br>robert.clark@dumasclark.com |
| Erlinda Abibas Aniel<br>75 Tobin Clark Drive<br>Hillsborough, CA 94010<br>Telephone: (605) 284-6417 | Robert E. Clark<br>Dumas & Clark LLP<br>150 California St., Suite 2200<br>San Francisco, CA 94111<br>Telephone: (415) 762-1640<br>Facsimile: (415) 762-1640<br>robert.clark@dumasclark.com |
| **Appellees** | **Represented by** |
| Aurora Loan Services LLC | Justin Donald Balser<br>Akerman Senterfitt<br>511 16th Street, Suite 420<br>Denver, CO 80202<br>Telephone: (303) 260-7712<br>Facsimile: (303) 260-7714<br>justin.balser@akerman.com |
| Mortgage Electronic Registration Systems, Inc. | Justin Donald Balser<br>Akerman Senterfitt LLP<br>511 16th Street, Suite 420<br>Denver, CO 80202<br>Telephone: (303) 260-7712<br>Facsimile: (303) 260-7714<br>justin.balser@akerman.com |
| Quality Loan Services Corp. | Melissa Robbins Coutts<br>McCarthy & Holthus LLP<br>1770 Fourth Avenue<br>San Diego, CA 92101<br>Telephone: (619) 685-4800<br>Facsimile: (619) 685-4811<br>mcoutts@mccarthyholthus.com |
| McCarthy and Holthus LLP | Melissa Robbins Coutts<br>McCarthy & Holthus LLP<br>1770 Fourth Avenue<br>San Diego, CA 92101<br>Telephone: (619) 685-4800<br>Facsimile: (619) 685-4811<br>mcoutts@mccarthyholthus.com |